UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RAMON A. RONDAN JARRETT,

                    Petitioner,

                                                    Case No. 1:26-cv-244

v.                                                  Honorable Jane M. Beckering

KEVIN RAYCRAFT et al.,

                    Respondents.

_____/

## OPINION

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled combined petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for declaratory, injunctive, and mandamus and emergency request for stay of removal. (Pet., ECF No. 1; Am. Pet., ECF No. 8.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## Discussion

### I.    Procedural History

Petitioner originally filed his combined § 2241 petition in the United States District Court for the Eastern District of Michigan. (Pet., ECF No. 1.) With the petition, Petitioner also sought a temporary restraining order and preliminary injunction staying Petitioner's removal and requesting expedited consideration of his pending application for adjustment of status. (ECF No. 2.) The Eastern District Court issued a temporary restraining order prohibiting ICE from removing

Petitioner from the United States on December 2, 2025, and, on December 16, 2025, extended it until the final resolution of this case. (Docket Text Dec. 2, 2025, and Dec. 16, 2025.)

The Eastern District Court subsequently granted Petitioner leave to file an amended § 2241 petition. (ECF No. 7.) In Petitioner's amended § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, assume jurisdiction over this action, declare that Respondents' actions to detain Petitioner violate the Due Process Clause of the Fifth Amendment and the Immigration and Nationality Act (INA), and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Am. Pet., ECF No. 8, PageID.113.) Respondents filed their response on January 12, 2026, (ECF No. 10), and Petitioner filed his reply on January 20, 2026, (ECF No. 11).

On January 21, 2026, the United States District Court for the Eastern District of Michigan transferred this action to this Court for further proceedings. (ECF No. 12.) The Parties have stipulated that the issues with respect to Petitioner's request for habeas relief are ripe for consideration. (ECF No. 15.)

## II.    Factual Background

Petitioner is a native and citizen of Cuba. (Am. Pet., ECF No. 8, PageID.95.) On or about July 24, 2022, Petitioner entered the United States at an unknown location (Notice to Appear (NTA), ECF No. 10-3, PageID.223.) On July 28, 2022, Petitioner was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5). (Notice of Parole, ECF No. 8-2, PageID.119 (stating that Petitioner was paroled into the United States "under Section 212(d)(5) of the Nationality and Immigration Act," which is codified at 8 U.S.C. § 1182(d)(5)).) On January 20, 2023, Petitioner filed a Form I-589, Application for Asylum and for Withholding Removal. (I-589 Notice of Action, ECF No. 8-3, PageID.122.) Then, on October 11, 2024, Petitioner filed an application for adjustment of status under the Cuban Adjustment Act. (I-797C Notice of Action, ECF No. 8-4,

PageID.124.) On June 13, 2025, United States Citizenship and Immigration Services (USCIS) closed Petitioner's pending asylum application without a decision on the merits. (Am. Pet., ECF No. 8, PageID.99.)

On September 3, 2025, an immigration judge concluded that Petitioner did not have a credible fear of harm if removed to Cuba and, therefore, returned the case "to [the Department of Homeland Security (DHS)] for removal of the Applicant." (Immigration Judge Order, ECF No. 3-4, PageID.76.) DHS did not immediately detain Petitioner.

On October 22, 2025, Petitioner was arrested and detained by ICE agents. (Am. Pet., ECF No. 8, PageID.95.) That same day, without prior notice to Petitioner, the Department of Homeland Security issued Petitioner a notice and order of expedited removal, charging Petitioner with inadmissibility under § 212(a)(7)(A)(i)(I) of the INA because Petitioner is an immigrant who, at the time of application for admission, is "not in possession of a valid unexpired [immigration or travel document]." (Notice and Order of Expedited Removal, ECF No. 8-5, PageID.126; Am. Pet., ECF No. 8, PageID.99.) [1] Respondents do not claim that Petitioner's parole expired or was revoked prior to his arrest. (*See* Resp., ECF No. 10, PageID.185.)

On December 22, 2025, a USCIS officer interviewed Petitioner and found that Petitioner had a credible fear of harm if he were removed to Mexico. (Resp., ECF No. 10, PageID.175.) The Department of Homeland Security, therefore, vacated Petitioner's order of expedited removal "to adjudicate his claim for asylum" and issued Petitioner a notice to appear charging Petitioner with inadmissibility under §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I) of the INA because Petitioner is an

---

[1] Respondents do not contend that Petitioner is subject to a final order of removal and, with it, mandatory detention under 8 U.S.C. § 1231(a)(2)(A). For the purposes of § 1231(a), a removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

immigrant "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General," and "who, at the time of application for admission, is not in possession of a valid unexpired [immigration or travel document]." (*Id.*; Notice to Appear (NTA), ECF No. 10-3, PageID.223.)

## III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV.    Jurisdiction

Respondents contend that this Court lacks jurisdiction to review Petitioner's claim for habeas relief. (Resp., ECF No. 10, PageID.177.) They claim that, because the Notice and Order of Expedited Removal originally charged Petitioner with expedited removal under § 1225(b)(1), this Court's § 2241 habeas inquiry is limited by 8 U.S.C. § 1252(a)(2)(A).

8 U.S.C. § 1252(a)(2)(A), titled "[r]eview relating to section 1225(b)(1), provides:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—

**(i)** except as provided in subsection (e), any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title.

*See* 8 U.S.C. § 1252(a)(2)(A)(i). Subsection (e) provides:

> Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of--
>
> **(A)** whether the petitioner is an alien,
>
> **(B)** whether the petitioner was ordered removed under such section, and
>
> **(C)** whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to section 1225(b)(1)(C) of this title.

*See* 8 U.S.C. § 1252(e)(2).

Here, however, Petitioner is not presently detained under § 1225(b)(1) for expedited removal. Respondents acknowledge that the Notice and Order of Expedited Removal has been vacated based upon a finding of credible fear (Resp., ECF No. 10, PageID.175; NTA, ECF No. 10-3, PageID.223) and that Petitioner is now in full § 1229a removal proceedings pursuant to a notice to appear (*see* NTA, ECF No. 10-3, PageID.223); *see* 8 U.S.C. § 1229a(a)(1) (providing that "removal proceedings under section 1229a of this title" begin with the government issuing a "notice to appear"); *see also Reyes v. Nielsen*, No. CV H-18-3971, 2020 WL 1442349, at *3 (S.D. Tex. Feb. 6, 2020), *report and recommendation adopted sub nom. Sequeria Reyes v. Nielsen*, No. 4:18-CV-3971, 2020 WL 1444920 (S.D. Tex. Mar. 24, 2020) (explaining that an "NTA is not issued in a[n] Expedited Removal because an alien is not entitled to a hearing before an Immigration Judge and is detained. *See* 8 C.F.R. § 235.3(2)(ii-iii)").

However, even if Petitioner were still detained under § 1225(b)(1), and regardless of the reach of § 1252(a)(2)(A), this Court would have jurisdiction to consider Petitioner's § 2241 habeas petition. The Suspension Clause forbids suspension of the writ of habeas corpus "unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I, § 9, cl. 2. As the Court explained in *Boumediene v. Bush*, 553 U.S. 723 (2008):

5

> The Clause protects the rights of the detained by a means consistent with the essential design of the Constitution. It ensures that, except during periods of formal suspension, the Judiciary will have a time-tested device, the writ, to maintain the 'delicate balance of governance' that is itself the surest safeguard of liberty.

*Id.* at 745. The protection exists even in the face of otherwise valid jurisdiction stripping statutes where the Suspension Clause ensures that "[h]abeas remains available to ensure that no branch of government detains a person in violation of law." *Eliseo A.A. v. Olson*, No. 25-cv-3381, 2025 WL 2886729, at a*6 (D. Minn. Oct. 8, 2025) (citing *Boumediene*, 553 U.S. at 765 ("[T]he writ . . . is itself an indispensable mechanism for monitoring the separation of powers.")).

The *Boumediene* Court set forth a two-part inquiry for determining whether the Suspension Clause applies to make habeas relief available in the face of an otherwise valid jurisdiction-stripping statute: (1) the Court must "determine whether a given habeas petitioner is prohibited from invoking the Suspension Clause due to some attribute of the petitioner or to the circumstances surrounding his arrest or detention." *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 166 (3d Cir. 2018) (internal quotation marks and citations omitted). "Then, if the petitioner is not prohibited from invoking the Suspension Clause, [this Court must] turn to the question whether the substitute for habeas is adequate and effective to test the legality of the petitioner's detention (or removal)." *Id.*

As to the first question, while noncitizens apprehended "within hours of surreptitiously entering the United States" are prohibited from invoking the Suspension Clause, *Castro v. United States Dep't of Homeland Sec.*, 835 F.3d 422, 445 (3d Cir. 2016) (citing *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)), those facts are not present here. Petitioner followed the procedure set forth by the government: he presented himself at a port of entry and, on July 28, 2022, was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5). (Am. Pet., ECF No. 8, PageID.91; Notice of Parole, ECF No. 8-2, PageID.119.) He has remained in the United States since that time. As the

Supreme Court observed in *Landon*, "once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly." *Landon*, 459 U.S. at 32; *see also United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) (explaining that "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country").

Moreover, in his petition, Petitioner is not challenging his right to remain in the United States, but "merely seeks release from custody—the traditional purpose of the habeas writ." *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1142 (D. Or. 2025). Petitioner was apprehended and detained within the United States. Moreover, Respondents do not suggest that any government objectives would be compromised if this Court exercised habeas corpus jurisdiction over Petitioner's petition.

Finally, as to the second factor, if the Court accepts Respondent's' position that 8 U.S.C. §§ 1252(a)(2)(A) and 1252(e)(2) strips courts of all jurisdiction to consider the legality of Petitioner's detention, including whether § 1225(b)(1) is lawfully applied to Petitioner, "the statute stripping jurisdiction . . . has [not] provided adequate substitute procedures for habeas corpus." *Boumediene*, 553 U.S. at 771.

Therefore, for the foregoing reasons, the Court concludes that even if §§ 1252(a)(2)(A)(i) and (e)(2) preclude this Court from reviewing Respondents' decision to detain Petitioner, the Court may exercise jurisdiction over Petitioner's challenge to his detention pursuant to the Suspension Clause.[2]

---

[2] This conclusion accords with other courts that have considered the *Boumediene* factors in actions challenging detention by those subject to expedited removal proceedings. *See, e.g., Alfonso Perez v. Mordant*, No. 2:25-cv-00947-SPC-DNF, 2025 WL 3466956, at *3 (M.D. Fla. Dec. 3, 2025); *Noori v. Larose*, No. 25-cv-3006-BAS-MMP, 2025 WL 3295386, at *2–3 (S.D. Cal. Nov. 26, 2025); *Y-Z-L-H*, 792 F. Supp. 3d at 1141–43. This Court has not located, and the parties have not

## V.    Exhaustion

Respondents argue that the Court should deny Petitioner's request for habeas corpus relief because Petitioner has not exhausted his administrative remedies.

Here, no applicable statute or rule mandates administrative exhaustion by Petitioner. Thus, whether to require exhaustion is within this Court's "sound judicial discretion." *See Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). "Courts have described an implied requirement to raise issues with an agency as a 'judge-made,' 'prudential,' or 'common law' duty to exhaust," *Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746 (6th Cir. 2019) (citations omitted), and such a court-made exhaustion rule must comply with statutory schemes and Congressional intent, *Shearson*, 725 F.3d at 593–94. Notably, the United States Court of Appeals for the Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention," *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sep. 9, 2025) (citing *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025)), and "[t]he Sixth Circuit has not formally adopted a standard for determining when prudential exhaustion applies." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. Aug. 29, 2025). However, courts within the Sixth Circuit "have applied the three-factor test, set forth in *United States v. California Care Corp.*, 709 F.2d 1241, 1248 (9th Cir. 1983) (derived from *McGee v. United States*,

---

identified, any case law declining to exercise jurisdiction under the Suspension Clause over habeas corpus actions involving similar facts and procedural postures.

402 U.S. 479, 484 (1971); *McKart v. United States*, 395 U.S. 185, 193–95 (1969)),” to determine

whether prudential exhaustion should be required. *Id.* (cleaned up). Under this three-factor test:

> Courts may require prudential exhaustion when:
>
> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision;
>
> (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and
>
> (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (citing *Shweika v. Dep't of Homeland Sec.*, No. 1:06-cv-11781, 2015 WL 6541689, at *12

(E.D. Mich. Oct. 29, 2015)).

Upon consideration of these factors, this Court concludes that prudential exhaustion should

not be required in Petitioner's case. Here, Petitioner's § 2241 petition presents principally legal

questions of statutory interpretation, which do not require the record that would be developed if

the Court required Petitioner to exhaust his administrative remedies. Moreover, this Court is not

bound by, and is not required to give deference to, any agency interpretation of a statute. *See Loper

Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (discussing that “courts need not and

under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the

law simply because a statute is ambiguous”).

Second, Petitioner's constitutional challenge to his detention does not require exhaustion.

The Sixth Circuit has noted that due process challenges generally do not require exhaustion

because the Board of Immigration Appeals (BIA) cannot review constitutional challenges. *See

Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006) (discussing that “an alien's due process

challenge generally does not require exhaustion,” but noting that an “alien must raise correctable

procedural errors,” such as a claim “that the BIA denied him due process by relying upon an

'incomplete and inaccurate' transcript to review his case," "to the BIA"). Finally, it is doubtful that BIA review of Petitioner's custody would preclude the need for judicial review. The Court reaches that conclusion based upon the fact that the Government has clearly set forth its belief that all noncitizens are subject to mandatory detention during removal proceedings. And, recently the BIA proclaimed that all noncitizens are subject to mandatory detention under § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216, 229 (BIA 2025). It is simply unlikely that any administrative review by the BIA would lead the Government to change its position, and thereby obviate the need for judicial review of Petitioner's § 2241 petition. Accordingly, for the foregoing reasons, this Court concludes that prudential exhaustion is not required.

Alternatively, even in situations where a court may ordinarily apply prudential exhaustion, the court may still choose to waive exhaustion. *See Lopez-Campos*, 2025 WL 2496379, at *4 (citations omitted). A court may choose to rule upon the merits of the issues presented when the "legal question is 'fit' for resolution and delay means hardship." *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) (citation omitted). A court may also waive exhaustion if the "pursuit of administrative remedies would be a futile gesture." *Shearson*, 725 F.3d at 594 (citation omitted).

Here, given the Government's position and the BIA's recent decision in *Yajure Hurtado*, requiring Petitioner to exhaust his administrative remedies would likely be futile. Moreover, it is clear that delay would result in hardship to Petitioner. It is "unmistakable that . . . depriving [Petitioner] of his liberty while awaiting a BIA appeal decision certainly equates to hardship. And any delay results in the very harm [Petitioner] is trying to avoid . . . – detention." *See Lopez-Campos*, 2025 WL 2496379, at *5.

In sum, the Court declines to enforce the doctrine of prudential exhaustion against Petitioner. Moreover, even if the Court were to conclude that exhaustion is warranted, the Court concludes in the alternative that waiver of exhaustion is appropriate. Accordingly, the Court will proceed to address the merits of Petitioner's § 2241 petition.

## VI.    Merits Discussion

### A.    Statutory and Regulatory Basis for Petitioner's Parole and Recent Detention

Here, Petitioner entered the United States at a port of entry and was subsequently paroled into the United States under 8 U.S.C. § 1182(d)(5)(A). Petitioner also filed a Form I-589 Application for Asylum and Withholding Removal, which remains pending. Respondents nonetheless claim that Petitioner is subject to expedited removal under § 1225(b)(1).

First, Petitioner is not properly subject to expedited removal.

There are two provisions within § 1225(b)(1) providing for expedited removal: the "arriving aliens provision" and the "designated as provision." "The Arriving Aliens Provision imposes expedited removal and detention on any noncitizen who is inadmissible due to lack of entry documents or fraud or willful misrepresentation on an admission application *and* 'who is arriving in the United States.'" *Rodriguez-Acurio v. Almodovar*, No. 2:25-cv-6065 (NJC), 2025 WL 3314420, at *19 (E.D.N.Y. Nov. 28, 2025) (quoting 8 U.S.C. § 1225(b)(1)(A)(i)) (emphasis in *Rodriguez-Acurio*). It is undisputed that Petitioner was, at one time, an "arriving alien," who was granted humanitarian parole into the United States as set forth in 8 U.S.C. § 1182(d)(5)(A). However, Respondents do not contend that Petitioner presently falls within this category. (*See* Resp., ECF No. 10, PageID.179) and, for the same reasons set forth in detail in *Hernandez Montiel v. Raycraft*, No. 1:25-cv-1610, 2026 WL 32076 (W.D. Mich. Jan. 6, 2026), Petitioner is not an "arriving alien" subject to mandatory detention and expedited removal under § 1225(b)(1)(A)(i). *See Rodriguez-Acurio*, 2025 WL 3314420 (holding that the petitioner, who entered the United

States as an "arriving alien," was paroled into the United States under 8 U.S.C. § 1182(d)(5), and who remained in the United States after the expiration of parole, cannot be classified as an "arriving alien" subject to expedited removal).

Respondents contend that § 1225(b)(1)(A)(iii) is "the relevant provision at issue in this case." (Resp., ECF No. 10, PageID.179.) Section 1225(b)(1)(A)(iii), the "designated as provision" allows the Attorney General to invoke expedited removal for "certain other aliens" who have "not been admitted or paroled into the United States." 8 U.S.C. § 1225(b)(1)(A)(iii). Respondents concede that Petitioner was paroled into the United States at the time of his October 22, 2025, arrest. And as discussed in detail below, Petitioner's parole was not properly terminated in accordance with the INA at that time. Therefore, the Court finds that § 1225(b)(1)(A)(iii) does not apply. *See Aviles-Mena v. Kaiser*, No. 25-CV-06783-RFL, 2025 WL 2578215, at *5 (N.D. Cal. Sept. 5, 2025) (citing 8 U.S.C. § 1225(b)(2)) (holding that, "because Aviles-Mena was 'paroled into the United States,' he cannot be subject to expedited removal under section 1225(b)(1)"); *Coal. for Humane Immigrant Rts. v. Noem*, No. 25-CV-872 (JMC), 2025 WL 2192986, at *30 (D.D.C. Aug. 1, 2025) (holding that individuals who had been paroled into the United States cannot be subject to expedited removal under § 1225(b)(1)).

Second, Petitioner's parole was not properly terminated at the time of his October 22, 2025, arrest. The INA "establishes the framework governing noncitizens' entry into and removal from the United States, with regulations promulgated by the enforcing agencies providing further governance." *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1132 (D. Or. 2025). "Noncitizens who arrive at a port of entry without a visa or other entry document, like Petitioner, are deemed 'inadmissible' under 8 U.S.C. § 1182(a)(7)" due to their lack of entry documents. *Id.* at 1132 & n.7 (noting that "[d]epending on the circumstances, other categories of inadmissibility may also apply,

but § 1182(a)(7) applies for noncitizens without proper documentation"). Once a noncitizen is deemed inadmissible, "the immigration officer must order the noncitizen's removal unless the noncitizen indicates an intention to apply for asylum or fear of prosecution." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)). The government may place the noncitizen into expedited removal proceedings, *see* 8 U.S.C. § 1225(b)(1), or the government may place the noncitizen into regular removal proceedings under 8 U.S.C. § 1229(a). *See Y-Z-L-H*, 792 F. Supp. 3d at 1132–33 (citing 8 U.S.C. § 1225(b)(2)).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). However, "applicants for admission may be temporarily released on parole [into the United States] 'for urgent humanitarian reasons or significant public benefit,'" as set forth in 8 U.S.C. § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)). The decision to grant parole pursuant to 8 U.S.C. § 1182(d)(5)(A) is determined "on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A). Then, "when the purpose of the parole has been served," § 1182(d)(5)(A) provides that "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

To terminate the previously granted parole, the agency must comply with the applicable regulatory and statutory requirements. As set forth in 8 C.F.R. § 212.5(e)(2)(i), which governs the "[t]ermination of parole":

> In cases not covered by paragraph (e)(1) of this section,[3] upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 C.F.R. § 212.5(e)(2)(i). That is, "[u]nder the governing regulation, [§ 1182(d)(5)(A)] parole may be terminated only if the purpose of parole is accomplished, or humanitarian reasons and the public benefit no longer warrant parole." *Loaiza Arias v. LaRose*, No. 3:25-cv-02595-BTM-MMP, 2025 WL 3295385, at *3 (S.D. Cal. Nov. 25, 2025) (citing 8 C.F.R. § 212.5(e)). As explained below, the Court concludes that Respondents have failed to follow the applicable statutory and regulatory provisions to terminate Petitioner's parole. *Cf. Coal. for Humane Immigrant Rts. v. Noem*, No. 25-cv-872 (JMC), 2025 WL 2192986, at *2 (D.D.C. Aug. 1, 2025) (holding that the government failed to follow the applicable statutory and regulatory provisions and that paroled noncitizens cannot be subject to expedited removal proceedings); *Salgado Bustos v. Raycraft*, No. 25-13202, 2025 WL 3022294, at *5–7 (E.D. Mich. Oct. 29, 2025) (same); *E.V. v. Raycraft*, No. 4:25-cv-2069, 2025 WL 2938594, at *10 (N.D. Ohio Oct. 16, 2025) (same).

Based on the information before the Court, it does not appear that the purpose of Petitioner's parole has been accomplished. Petitioner left Cuba, seeking asylum in the United States. At that time, Petitioner was granted parole pursuant to 8 U.S.C. § 1182(d)(5)(A), which

---

[3] Paragraph (e)(1) provides for the automatic termination of parole without written notice where the noncitizen has either departed from the United States or at the expiration of time for which the parole was authorized. The parties have not suggested that either circumstance applies here.

provides for parole into the United States "for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A). Petitioner filed a Form I-589 Application for Asylum and Withholding Removal, which is currently pending. (*See* Resp., ECF No. 10, PageID.175.) There is nothing before the Court to suggest that the humanitarian reason or public benefit that justified Petitioner's parole no longer applies.

Further, district courts that have addressed the termination of § 1182(d)(5)(A) parole "have found that just as a grant of parole requires an individualized review, revocation of parole requires a case-by-case assessment to comply with the statute," and the Court finds the reasoning in these non-binding cases to be persuasive. *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 146 (W.D.N.Y. 2025) (citations omitted) (addressing this issue, and granting the petitioner's motion for preliminary injunction and ordering that the petitioner be released); *see, e.g.*, *Y-Z-L-H*, 792 F. Supp. 3d at 1137–47 (addressing this issue, and granting the petitioner's habeas petition and ordering that the petitioner be released from custody); *Loaiza Arias*, 2025 WL 3295385, at *2–4 (same); *Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10–13 (S.D. Cal. Oct. 1, 2025) (same); *Munoz Materano v. Arteta*, No. 25 CIV. 6137 (ER), --- F. Supp. 3d ----, 2025 WL 2630826, at *14–17 (S.D.N.Y. Sept. 12, 2025) (same); *Gabriel B.M. v. Bondi*, No. 25-cv-4298 (KMM/EMB), 2025 WL 3443584, at *6–7 (D. Minn. Dec. 1, 2025) (addressing this issue, and granting the petitioner's request for a preliminary injunction and ordering the petitioner's release from custody); *Orellana v. Francis*, No. 25-cv-04212 (OEM), 2025 WL 2822640, at *2–3 (E.D.N.Y. Oct. 3, 2025) (addressing the issue in the context of a motion for reconsideration filed by the respondents, and affirming the court's grant of habeas relief to the petitioner and the court's order to release the petitioner). *But see Doe v. Noem*, 152 F.4th 272, 278–79, 285 (1st Cir. 2025) (reversing district court's grant of preliminary relief and vacating district court's stay of the

termination notice for previously granted parole because "Plaintiffs ha[d] not demonstrated a strong likelihood of success in showing that under the statute, the Secretary must terminate these grants of parole under the [parole] program[s] on an individual basis").[4] Here, there is no indication

---

[4] *Doe v. Noem*, 152 F.4th 272 (1st Cir. 2025), is distinguishable from the present case. As the United States District Court for the District of Minnesota recently explained in *Gabriel B.M. v. Bondi*, a case that is similar to the present action:

> First, unlike here, the government in *Doe* did make a determination that the purpose of the plaintiffs' parole had been accomplished. The plaintiffs, non-citizens who entered into the United States through the Cuba, Haiti, Nicaragua, and Venezuela ("CHNV") parole program, lost parole status when the government, via a lengthy and thorough notice published in the Federal Register, decided to terminate the CHNV program altogether, determining that the program no longer served its implementing purpose. In contrast, for Petitioner's revocation, there is no evidence to suggest that such a determination or other finding was made *at all*, and the evidence in the record strongly suggests it wasn't.
>
> Second, the *Doe* court did not address the regulatory requirements established by 8 C.F.R. § 212.5(e)(2)(i), which implement the parole statute and illuminate the procedural requirements for termination of parole. . . . Part 212.5(e)(2)(i) not only restates the revocation authority enumerated in § 1182(d)(5)(A), but also clarifies the (admittedly minimal) procedures the Respondents must follow when invoking the parole statute's revocation authority. The Respondents' failure to follow the governing regulation is equally unlawful. . . .
>
> Finally, and perhaps most importantly, the *Doe* court's interpretation of § 1182(d)(5)(A) reads the bulk of the revocation clause out of the statute. That interpretation rests entirely on the fact that the revocation clause does not include the same "case-by-case" language. But such a myopic focus on that omission elides a significant portion of the text of the revocation clause. The revocation clause in the parole statute gives the Secretary of Homeland Security the authority to revoke parole "when the purposes of such parole shall, in the opinion of the Secretary . . ., have been served." If Respondents were not required to make such a determination to effect termination of parole, then there would be no reason for this language to have been included in the statute. This contradicts "one of the most basic interpretive canons, that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (cleaned up). Instead, because the parole statute (and its implementing regulation) require such a precondition determination to be made, the Court enforces it here.

*Gabriel B.M. v. Bondi*, No. 25-cv-4298 (KMM/EMB), 2025 WL 3443584, at *7 (D. Minn. Dec. 1, 2025). *Doe v. Noem* is distinguishable from the present action for these same reasons.

in the record before the Court that any such case-by-case determination regarding the revocation of Petitioner's parole was made *prior to* Petitioner's October 22, 2025, detention. (*See* Resp., ECF No. 10, PageID.185.)

In summary, as explained above, based on the information that is presently before the Court, there is no indication that Respondents followed the applicable statutory and regulatory requirements to revoke or terminate Petitioner's parole. If Respondents did not follow those requirements, then they did not have the authority to arrest and detain Petitioner, "unless there [wa]s some other valid reason to arrest him." *Mata Velasquez*, 794 F. Supp. 3d at 145; *cf. Norfolk S. Ry. Co. v. U.S. Dep't of Lab.*, No. 21-3369, 2022 WL 17369438, at *6 (6th Cir. Dec. 2, 2022) (discussing that "an agency's action that fails to observe the procedures required by its own regulations should be set aside" (citation omitted)); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) ("It is an elemental principle of administrative law that agencies are bound to follow their own regulations[,] . . . [and] '[a]n agency's failure to follow its own regulations tends to cause unjust discrimination and deny adequate notice and consequently may result in a violation of an individual's constitutional right to due process.'" (additional internal quotation marks omitted) (quoting *Sameena, Inc. v. U.S. Air Force*, 147 F.3d 1148, 1153 (9th Cir. 1998))).

Respondents do not claim that they had any reason to arrest and detain Petitioner other than his status as a noncitizen. Indeed, Respondents argue that *any noncitizen*, regardless of whether they are already present and residing in the United States, is "an alien seeking admission" subject to mandatory detention under § 1225. This Court and other courts throughout the country have rejected this argument. *Cf., e.g.*, *Salgado Mendoza v. Noem*, No. 1:25-cv-1252, 2025 WL 3077589, at *6 (W.D. Mich. Nov. 4, 2025); *Ruiz Mejia v. Noem*, No. 1:25-cv-1227, 2025 WL 3041827, at *5–6 (W.D. Mich. Oct. 31, 2025); *De Jesus Ramirez v. Noem*, No. 1:25-cv-1261, 2025 WL

3039266, at *5 (W.D. Mich. Oct. 31, 2025); *Escobar-Ruiz v. Raycraft*, No. 1:25-cv-1232, 2025

WL 3039255, at *5 (W.D. Mich. Oct. 31, 2025); *Marin Garcia v. Noem*, No. 1:25-cv-1271, 2025

WL 3017200, at *5 (W.D. Mich. Oct. 29, 2025); *Cervantes Rodriguez v. Noem*, No. 1:25-cv-1196,

2025 WL 3022212, at *6 (W.D. Mich. Oct. 29, 2025); *Puerto-Hernandez v. Lynch*, No. 1:25-cv-

1097, 2025 WL 3012033, at *9 (W.D. Mich. Oct. 28, 2025); *Rodriguez Carmona v. Noem*,

No. 1:25-cv-1131, 2025 WL 2992222, at *6 (W.D. Mich. Oct. 24, 2025).

Accordingly, for the reasons set forth above, the Court concludes that Respondents failed

to follow the applicable statutory and regulatory requirements to revoke or terminate Petitioner's

§ 1182(d)(5)(A) parole.[5]

### B.    Fifth Amendment Due Process Considerations

Petitioner also argues that his detention violates the Fifth Amendment's Due Process

Clause. Respondents counter Petitioner's arguments by stating that the process due under the

constitution is coextensive with the administrative immigration procedures provided by Congress.

"Freedom from imprisonment—from government custody, detention, or other forms of

physical restraint—lies at the heart of the very liberty that [the Due Process Clause] protects."

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). The Fifth Amendment's Due

---

[5] The Court has recently reached the same conclusion in other habeas corpus actions filed by
immigration detainees who had received § 1182(d)(5)(A) parole. *See Kenzhebaev v. Noem*,
No. 1:25-cv-1786, 2025 WL 3737975 (W.D. Mich. Dec. 29, 2025); *Hernandez v. Raycraft*,
No. 1:25-cv-1719, 2025 WL 3730936 (W.D. Mich. Dec. 26, 2025); *Tezara Munoz v. Lynch*,
No. 1:25-cv-1632, 2025 WL 3687338 (W.D. Mich. Dec. 19, 2025); *Gil Pirona v. Noem*, No. 1:25-
cv-1571, 2025 WL 3687339 (W.D. Mich. Dec. 19, 2025); *Infante Rodriguez v. Raycraft*, No. 1:25-
cv-1560, 2025 WL 3673583 (W.D. Mich. Dec. 18, 2025); *Quintero-Martinez v. Raycraft*,
No. 1:25-cv-1507, 2025 WL 3649515 (W.D. Mich. Dec. 17, 2025); *Puerta Marin v. Lynch*,
No. 1:25-cv-1444, 2025 WL 3533028 (W.D. Mich. Dec. 10, 2025); *Parra Ocanto v. Lynch*,
No. 1:25-cv-1447, 2025 WL 3522113 (W.D. Mich. Dec. 9, 2025); *Arevalo v. Lynch*, No. 1:25-cv-
1365, 2025 WL 3522106 (W.D. Mich. Dec. 9, 2025); *Rodriguez Martinez v. Raycraft*, No. 1:25-
cv-1504, 2025 WL 3511093 (W.D. Mich. Dec. 8, 2025); *Godoy Zelaya v. Lynch*, No. 1:25-cv-
1355, 2025 WL 3496472 (W.D. Mich. Dec. 5, 2025).

Process Clause extends to all persons, regardless of status. *See A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025). Thus, noncitizens, such as Petitioner, are entitled to its protections. *See id.*; *see also Chavez-Acosta v. Garland*, No. 22-3045, 2023 WL 246837, at *3 (6th Cir. Jan. 18. 2023).

The Sixth Circuit held that the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), regarding the adequacy of process, applies in the context of immigration detention. *See, e.g.*, *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852–56 (6th Cir. 2020) ("If this court has previously addressed the due-process claim, then we are bound by precedent; if the claim is an issue of first impression, then we generally apply the three-factor test the Supreme Court set out in *Mathews v. Eldridge*."). Under *Mathews*, the Court must consider the following three factors: "(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *See Lopez-Campos*, 2025 WL 2496379, at *9 (citing *Mathews*, 424 U.S. at 335).

The first *Mathews* factor clearly weighs in favor of Petitioner. Here, Petitioner entered the United States at a port of entry, and Respondents granted Petitioner parole into the United States, determining that Petitioner was not a flight risk or danger. Respondents have now detained Petitioner, and there is no dispute that Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citation omitted). The Court may also consider Petitioner's conditions of confinement, i.e., "whether a detainee is held in conditions indistinguishable from criminal incarceration." *See Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). There can be no doubt that he is "experiencing [many of] the

deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *See Günaydin*, 784 F. Supp. 3d at 1187.

The second *Mathews* factor also weighs in Petitioner's favor. Clearly, there is a high risk of erroneously depriving Petitioner of his freedom if Petitioner does not receive an individualized determination regarding the revocation of his parole. "To mitigate the risk of erroneous deprivation, due process would require, 'at [a] minimum, the opportunity for [Petitioner] to submit evidence relevant to whether [the government] should revoke [his parole] before [it] make[s] a revocation decision.'" *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 153 (W.D.N.Y. 2025) (citation omitted).

Finally, under the third *Mathews* factor, the Court recognizes that the Government "does, indeed, have a legitimate interest in ensuring noncitizens' appearance at removal proceedings and preventing harms to the community." *See Sampiao v. Hyde*, No. 1:25-cv-11981-JEK, 2025 WL 2607924, at *12 (D. Mass. Sep. 9, 2025) (citation omitted). However, Respondents have not shown that they have a significant interest in Petitioner's continued detention. Notably, continuing to enforce Petitioner's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention. *See id.*

In sum, the Court's balancing of the *Mathews* factors weighs in Petitioner's favor. Accordingly, the Court concludes that Petitioner's current detention violates Petitioner's Fifth Amendment due process rights.

## VII.    Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

## VIII.   Proper Respondents

Respondents argue that the Detroit ICE Field Office Director is the only proper Respondent in this action, and they seek the dismissal of all of the other named Respondents. The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's Orders regarding a hearing or release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the ICE Detroit Field Office Director, the District Director of ICE, and the Secretary for the Department of Homeland Security as Respondents. The Court will dismiss the Warden of North Lake Processing Center as a Respondent.

## <u>Conclusion</u>

For the reasons discussed above, the Court will enter a Judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from custody, subject to any conditions that existed under Petitioner's § 1182(d)(5)(A) parole. Additionally, the Court will enjoin Respondents from re-detaining Petitioner absent a material change in circumstances unless the requirements of due process have been satisfied. The Court will also order Respondents to file a status report within three days of the issuance of the Court's Opinion and Judgment to certify compliance with this

Opinion and the corresponding Judgment. Further, the Court will dismiss the Warden of North Lake Processing Center Warden as a Respondent.

Dated:    February 6, 2026                    /s/ Jane M. Beckering
                                              Jane M. Beckering
                                              United States District Judge

22